UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA J. ADAMS,

        Plaintiff,                            Case No. 06-12338

vs.                                          DISTRICT JUDGE VICTORIA A. ROBERTS
                                                 MAGISTRATE JUDGE STEVEN D. PEPE

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

Regina Adams brought this action under 42 U.S.C. §405(g) to challenge a final decision of the Commissioner finding that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that the Plaintiff's motion for summary judgment be **DENIED,** and that the Commissioner's motion for summary judgement be **GRANTED**.

    **A.**    **Procedural History**

Plaintiff applied for DIB in October 2003 (R. 53), alleging that she became disabled in July 2002, due to carpal tunnel syndrome (R. 53, 59). After Plaintiff's claim was initially denied (R. 23-26), a hearing was held on October 26, 2005, before Administrative Law Judge Charles Reite (ALJ) (R. 195-218). Plaintiff was represented by her current attorney, Mikel Lupisilla, and

1

Vocational Expert Judith Findora, M.A., (VE) also testified (R. 211-216).

ALJ Reite concluded in a December 8, 2005, decision that Plaintiff was not under a disability as defined by the Act because she remained capable of performing a limited range of sedentary work (R. 16-20). The Appeals Council denied Plaintiff's request for review (R. 5-7).

### B. **Background Facts**

#### 1. *Plaintiff's Hearing Testimony and Statements*

Plaintiff was 44 years old at the time of the ALJ's decision (R. 17). She finished the twelfth grade and had received no other vocational training (R. 63). Plaintiff was receiving Workers' Compensation at $542.96 a week (R. 202).[1] She lived with her mother and her nine year old son.

She had previously worked as a medical lab manager and as an assembler (R. 60, 69). Plaintiff stopped working due to bilateral carpel tunnel syndrome, which caused pain, tingling, and numbness in both her hands (R. 201).

Plaintiff reported attending church every Sunday (R. 202). In February 2004, Plaintiff bowled approximately once a week for three games (R. 205). She had a driver's licence and routinely drove (R. 206). Plaintiff split grocery shopping and housework responsibilities with her mother (R. 203). She was able to make her bed, clean the bathrooms, and do the majority of household chores, but her mother vacuumed. Plaintiff was able to do most of the cooking, but her mother shared some of the work (R. 204).

Plaintiff testified that she was in constant pain, which started in her finger tips and ran up

---

[1] Plaintiff testified that her Worker's Compensation had not been fully resolved at the time of the hearing (R. 210). In addition, Plaintiff was applying for retirement disability from General Motors, but it also had not been fully resolved.

her elbows and both hands. Medication was ineffective in treating it. The medication caused Plaintiff to feel tired and "sleep a lot." She reported taking an average of two naps a day, which lasted "anywhere from ½ hour, 45 minutes, in between, sometime an hour."

Plaintiff had no difficulty sitting, standing or walking (R. 205). She testified that she was able to lift approximately five or six pounds on a regular basis. Yet, Plaintiff admittedthat she was able to lift a ten pound ball while bowling. The ALJ asked Plaintiff to consider if she could do a job where she would not have to use her hands, such as working as a video surveillance monitor (R. 208). Plaintiff responded that she believed her need to nap would interfere with her ability to do the job.

Plaintiff treated once or twice a month with Dr. Saaed, her primary care doctor (R. 206). At the time of hearing, Plaintiff was taking only Motrin, 800 milligrams, for pain and swelling (R. 207). Dr. Doss recommended that Plaintiff have surgery on her hands, but she declined to have it because there was no guarantee that it would be successful (R. 208-209).[2]

### 2. *Medical Evidence*

A May 2001 EMG was consistent with moderate to severe bilateral carpal tunnel syndrome, worse on the right than the left (R. 92-96). Although doctors offered corrective surgery, Plaintiff elected to receive conservative treatment, consisting of physical therapy and use
of a wrist brace (R. 93, 98-99).

The record contains reports from Plaintiff's employer; beginning in late 2001 that she was

---

[2] Plaintiff indicated that Dr. Doss was "just consultation only" (R. 208).

limited from performing forceful gripping or grasping with either hand, or using torque guns (R. 106-22).

Plaintiff participated in hand therapy in September 2003; she complained of mild bilateral

wrist and hand pain, which increased after repetitive gripping tasks (R. 101).

On December 24, 2003, the DDS medical advisor completed a physical residual functional capacity assessment (R. 138-145). He found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. She could stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and was unlimited in her ability to push/and or pull (R. 139).

In February 2004, orthopedic surgeon Fredrick C. Schreiber, D.O., examined Plaintiff for complaints of left knee pain beginning in late 2003 (R. 146-48). Dr. Schreiber identified possible loose joint body with minimal degenerative changes, and recommended conservative treatment. Subsequent treatment records contain minimal references to knee pain (R. 150-57).

In October 2005, Elmahdi Saeed, M.D., completed a questionnaire concerning Plaintiff's functional capacity (R. 173). Dr. Saeed described Plaintiff as unable to perform any repetitive movement of both hands, power hose usage, or forceful gripping or grasping. He indicated that these limitations would "likely disrupt a regular job schedule with low physical demands" as much as 40 hours per month.

*Medical Evidence Submitted After the December 8, 2005, decision to the Appeals Council*

On December 12, 2005, Plaintiff's counsel submitted a letter to the Appeals Council with attached evidence from Family Orthopedic Associates dated August 17, 2001, through October

4

1, 2001, from Hurley Medical Center dated September 27, 2004, through October 13, 2005, and from Hurley Mental Health Associates dated June 14, 2005 (R. 174-194). The records largely document several of Plaintiff's previously stated conditions, such as bilateral carpal tunnel syndrome and complaints of left knee pain.[3]

### 3. *Vocational Evidence*

VE Findora described Plaintiff's past relevant work and defined her exertional and skill levels for these positions (R. 212). Plaintiff's work as a manager in the medical industry was sedentary and skilled. Her work as an assembler was light and unskilled.

ALJ Reite asked VE Findora to consider an individual of Plaintiff's age, education, and work experience who could perform work at the light exertional level, but had the following limitations: she would only be able to use the upper extremities, bilaterally, on an occasional basis, and no forceful gripping "or going to describe a task, opening a tight – jar lid type thing that require twisting or torquing (sic) kind of activity with the hands" (R. 213). VE Findora testified that this hypothetical person could not perform Plaintiff's past relevant work. Yet, VE Findora indicated that in the light category there were approximately 18, 400 jobs regionally and approximately 555,000 jobs nationally that Plaintiff could perform, such as 4,400 regional jobs

---

[3] Because this evidence was not before the ALJ when he rendered the final decision of the Commissioner, it cannot be considered for substantial evidence review. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). The only purpose for which this Court can consider this additional evidence is to determine whether this case should be remanded to the agency pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Secretary of Health and Human Services*, 2 F.3d 692, 695-96 (6th Cir. 1993). This court may remand the case if the additional evidence is new and material, and if there was good cause for failure to incorporate the additional evidence into the record at a prior hearing. 42 U.S.C. § 405(g) (sentence six); *See Wyatt*, 974 F.2d at 685; *Casey v Secretary of Health and Human Services*, 987 F.2d 1130, 1233 (6th Cir. 1993).

as an attendant or usher or 2,000 regional jobs as a counter clerk (R. 213-214). At the sedentary level, there would be approximately 5,300 regional telemarketer jobs, 1,000 regional credit clerk jobs, and 13,000 regional receptionist jobs.

ALJ Reite then asked the VE to assume he found Plaintiff had a mild limitation on concentration, pace and persistence (R. 214-215). VE Findora stated that such a limitation would have no effect on the jobs she identified at either the light or sedentary levels. The ALJ then asked Plaintiff to assume a person who in addition to his previous stated limitations would require the opportunity to recline up to twice a day for ½ hour to 45 minutes. The VE indicated this would preclude all competitive employment. Plaintiff's counsel asked the VE to clarify if her answer was based on the fact that competitive employment requires an individual to work eight hours a day, five days a week, 40 hours a week, or some equivalence thereof. VE Findora indicated that was correct "with the appropriate breaks just beyond normal."

### 4. *The ALJ's Decision*

ALJ Reite found that Plaintiff was not under a disability as defined in the Social Security Act since July 21, 2002, her alleged onset date (R. 20). He opined that Plaintiff met the disability insured requirements of the Act through December 31, 2008, and that she had not engaged in substantial gainful activity since the alleged onset of disability (R. 19). Further, ALJ Reite found that Plaintiff's bilateral carpel tunnel syndrome and degenerative joint disease of the left knee qualified as severe impairments.[4] Yet, the severity of Plaintiff's conditions did not meet or equal the requirements of any impairment listed in Appendix 1, Subpart P, of

---

[4] In addition, although Plaintiff was also diagnosed with hypertension and hypothyroidism, the ALJ noted that there was no indication that either condition represented a severe impairment (R. 17).

Regulations No. 4 (20 C.F.R. § 404.1520(d)) (the "Listing").

ALJ Reite found that Plaintiff retained a residual functional capacity (RFC) for a range of sedentary work, with the following limitations: can occasionally use the bilateral upper extremities and preclusion from forceful gripping activities. In addition, Plaintiff had a mild limitation (up to 15% of the time) in maintaining concentration, persistence, and pace secondary to chronic pain and side effects of pain medication. ALJ Reite concluded that Plaintiff was unable to perform her past relevant work.

The ALJ noted that the above RFC is consistent with the medical evidence and clinical findings. In so finding, the ALJ indicated that he gave "great weight" to the October 2005 opinion of treating physician Elmahdi Saeed, M.D., who indicated that Plaintiff was limited to a range of work at the sedentary to light exertional levels with additional preclusion form repetitive

movement, power hose usage, and forceful gripping with both hands (R. 18). The ALJ gave "little weight" to the "January 2005 opinion" of the Disability Determination Services (DDS) medical advisor indicating an RFC for a range of work at the light exertional level with additional manipulative limitations because the DDS medical advisor did not properly consider Plaintiff's subjective complaints and the medical evidence supporting the severity of Plaintiff's bilateral carpel tunnel syndrome.[5] In addition, the DDS medical advisor did not have access to the later medical evidence, including the October 2005 opinion of treating physician Dr. Saeed,

---

[5] The ALJ refers to the DDS medical advisor's "January 2005 opinion" and cites exhibit 5F. Yet, exhibit 5F is dated December 24, 2003. It is assumed the ALJ intended to refer to exhibit 5F, regardless of its date, as this record is the DDS medical advisor's Physical Residual Functional Capacity Assessment.

supporting the ongoing severity of Plaintiff's combination of bilateral carpel tunnel syndrome, left knee pain and the side-effects of medication.

ALJ Reite found that Plaintiff's allegations regarding her limitations were only credible to the extent that her activities of daily living and alleged functional limitations were generally consistent with the above RFC (R. 18). The ALJ opined that Plaintiff's continuing conservative treatment with only Motrin indicative that Plaintiff's pain was not severe as alleged. Similarly, he found Plaintiff's continuing resistance to surgery indicative that her pain and limitation of function was not as severe as alleged. Further, ALJ Reite found Plaintiff's present activities of daily living, including cooking, laundry, shopping, housework, driving daily, working at her son's school, and bowling several times a week indicative that she was "more functional than she has alleged." The ALJ concluded that Plaintiff was able to perform a significant number of jobs in the national economy, such as those identified by the VE (R. 19).

## II. ANALYSIS

### A. Standard Of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a

different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[6] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

### B. <u>Factual Analysis</u>

In her motion for summary judgment, Plaintiff argues that ALJ Reite erred by failing to properly evaluate the medical opinion of Dr. Saeed, and by forming an inaccurate hypothetical that does not accurately portray Plaintiff.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a

---

[6] *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

matter of law.[7] The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The regulation also limits the scope of the subject matters on which the Commissioner will give a treating source opinion greater weight. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d) *See also*, S.S.R. 96-2p.

The regulation also limits the subjects upon which the Commissioner must defer to a treating source opinion to "the issue[s] of the nature and severity of your impairment[s]." 20 C.F.R. § 404.1527(d)(2). Under 20 C.F.R. § 404.1527(e), the Commissioner will not defer or provide special significance to treating source opinions on certain subjects that are "reserved to the Secretary" which includes treating physician opinions on a claimant's disability under the Listing, on residual functional capacity or a general and conclusory statement of disability or inability to work.

Under 20 C.F.R. § 404.1513 (b)(6) a treating source "statement about what [a claimant] can still do despite . . . impairment(s)" falls within the Commissioner's definition of "medical

---

[7]*See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

opinion." under §404.1527(a)(2) because "what [ a claimant] can still do despite impairment(s)" and "physical or mental restrictions" are medical judgments about the nature and severity of [a claimant's] impairment(s)."  The same logic seems to apply for the inverse, i.e. for what a claimant cannot do in light of the impairment.

Here Plaintiff's long time treating physician noted that Plaintiff would miss approximately 40 hours per month from a regular job schedule with low physical demands (R. 173).  While the ALJ said he gave "great weight" to Dr. Saeed's opinion, he never discussed the 40 hour limit.  While Dr. Saeed's opinion that Plaintiff was unable to perform any repetitive movement of both hands, power hose usage, or forceful gripping or grasping, were within his scope of giving a medical opinion under 20 C.F.R. § 404.1513 (b)(6), his translating this into the number of hours a week or month are vocational opinions, not medical opinions to which the ALJ must give deference.  It is also likely that Dr. Saeed was referring to Plaintiff's last work on the assembly line at GM which likely involved  repetitive movement of both hands, power hose usage, or forceful gripping or grasping,

ALJ Reite in his findings rejected the opinion of the state medical examiner that Plaintiff could perform at the light exertional level,[8] and limited her to sedentary work.  He asked VE Findora to consider an individual who would only be able to use the upper extremities, bilaterally, on an occasional basis, and no forceful gripping or performing such tasks as "opening a tight – jar lid type thing that require twisting or torquing (sic) kind of activity with the hands"

---

[8] The ALJ stated that he would give "little weight" to the opinion of the DDS medical advisor because, at least in part, the DDS medical advisor "did not have access to the later medical evidence, including the October 2005 opinion of treating physician Saeed, supporting the ongoing severity of claimant's combination of bilateral CTS, left knee pain and the side-effects of medication" (R. 18).

11

(R. 213). This seems consistent with Dr. Saeed's opinion. VE Findora noted that such a hypothetical person could not perform Plaintiff's past relevant work, which Dr. Saeed would likely agree with. VE Findora indicated further that such a hypothetical worker could perform approximately 5,300 sedentary regional telemarketer jobs, 1,000 regional credit clerk jobs, and 13,000 regional receptionist jobs. It was these jobs upon which ALJ Reite relied in his decision. There is nothing in the record to suggest that these jobs involved the repetitive movement of both hands, power hose usage, or forceful gripping or grasping that Dr. Saeed was concerned with.

ALJ Reite in his hypothetical question did adequately accommodate the hand limitations of Dr. Saeed. And there is no error in this regard.

Finally, Plaintiff testified that she suffered from medication side effects that made her "tired and I sleep a lot, you know, because I have to take my medicine on a constant, you know, basis but that's about it" (R. 204-205). She further testified that she took about two naps per day that lasted "anywhere from ½ hour, 45 minutes, in between, sometime an hour, depends on how well I, you know, sleep the night before . . ." Plaintiff indicated that she had problems sleeping at night "because of the pain, it wakes me up a lot during the night, the tingling and the numbness" (R. 205).

At the hearing, the ALJ asked VE Findora to assume a person who would require the opportunity to recline up to twice a day for 30 - 45 minutes (R. 215). The VE indicated this would preclude all competitive employment. Plaintiff's counsel then asked the VE to clarify if her answer was based on the fact that competitive employment requires an individual to work eight hours a day, five days a week, 40 hours a week, or some equivalence thereof. VE Findora

indicated that was correct "with the appropriate breaks just beyond normal." The ALJ failed to provide any reasons why he declined to rely upon the VE's response to this hypothetical question, or to include such a limitation in his assessment of Plaintiff's residual functional capacity.

Yet, these asserted symptoms are nowhere mentioned in Dr. Saeed's opinion or any other medical records. On this record there is not sufficient cause to reverse the Commissioners' decision for asserted symptoms that have no support in the medical record.

### III. EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

Plaintiff introduces evidence submitted first to the Appeals Council, but does not make an argument for remand based on this "new" evidence. Where a party presents new evidence on appeal to the Appeals Council that denies review or to the federal court for the first time, the Court can consider the evidence only to determine if a remand is appropriate under sentence six of 42 U.S.C. § 405(g) for further consideration of the evidence but only if the party seeking remand shows that the new evidence is material.[9] In this case, Plaintiff has not provided this Court with an argument for a sentence six remand. Nor is it evident that this evidence warrants a remand under sentence six of § 405(g). The submissions are largely cumulative of evidence already in the medical record.

This Court need only consider issues that have been fully developed by the briefs or in the record. Issues that are adverted to in a perfunctory manner without some effort to develop an argument related to them are generally deemed waived. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002). Further, "[i]t is not sufficient for a party to mention a

---

[9] *See*, footnote 3.

possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997). Therefore, there is no basis for this court to order a remand based on this evidence first presented to the Appeals Council.

**IV.     RECOMMENDATION**

For the above stated reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED,** and that the Commissioner's motion for summary judgement be **GRANTED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.


| | |
|---|---|
| Dated: May 31, 2007 | s/Steven D. Pepe |
| Flint, Michigan | United States Magistrate Judge |


CERTIFICATE OF SERVICE

     I hereby certify that on <u>May 31, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>James A. Brunson, Mikel E. Lupisella,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606</u>

                                              s/ James P. Peltier
                                              James P. Peltier
                                              Courtroom Deputy Clerk
                                              U.S. District Court
                                              600 Church St.
                                              Flint, MI 48502
                                              810-341-7850
                                              pete_peliter@mied.uscourts.gov